**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CHRISTIE TARSA and SARAH TRATTNER, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>MARTKETSOURCE INC., and AMERICAN HONDA MOTOR CORP INC.,<br>          Defendants. | CIVIL ACTION NO.<br>NO.: 1:19-cv-02684-WMR |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND APPROVAL OF ATTORNEY'S FEES**

On May 8, 2020, this Court entered an Order Granting Preliminary Approval of Class and Collective Action Settlement and Authorized Notice of Proposed Settlement to Class and Collective Action Members and Notice of Final Fairness Hearing. (D.E. 82) (the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, the Settlement Class Representatives Plaintiffs Christie Tarsa and Sarah Trattner (the "Named Plaintiffs") hereby submit their Unopposed Motion and Memorandum of Law for Final Approval of the Class and Collective Settlement and Approval of Attorney's Fees, and request that this Court enter an the Final Order granting the Plaintiffs' attorneys' fees, costs and the award service or incentive

1

payments pursuant to the Settlement Agreement and Release Waiver (the "Settlement Agreement," attached hereto as **Exhibit 1**).

## I.   INTRODUCTION

On or about June 12, 2019, Named Plaintiffs commenced this litigation for unpaid overtime compensation on behalf of themselves and similarly situated employees pursuant to the Fair Labor Standards Act (the "FLSA") and corresponding California State Wage Laws.  *See* Plaintiffs' Second Amended and Third Amended FLSA Collective and Class Action Hybrid Complaint (D.E. 51, and DE 77).  Following extensive document productions and negotiations, including 2 all day mediations before respected mediator Lee Parks, the Plaintiffs and the Defendants, MarketSource Inc. ("MarketSource") and American Honda Motor Company Inc. ("Honda") and, together with the Plaintiffs, (the "Parties") reached a settlement of the FLSA overtime and California state law wage claims on a class action and National collective action basis.

Subject to final court approval, Class Counsel have secured a settlement of Plaintiff's claims on a class-wide basis for significant monetary relief of $3,250,000.00 (the "Gross Settlement Fund"). The proposed settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Fair Labor Standards Act ("FLSA").  By the instant Motion, Named Plaintiffs now seek final approval of

settlement, approval of incentive payments pursuant to §2(c) of the Settlement Agreement, and approval Class Counsel's attorney's fees in the amount of $970,000, which is 29.8461538% of the Gross Settlement Fund pursuant to § 2(d) and of the Settlement Agreement.

On May 8, 2020, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement agreement and directed that notice be mailed to class members. (D.E. 82). Pursuant to the Preliminary Approval Order, members of the classes were notified of the terms of the settlement and their right to opt-out of or object to the settlement pursuant to a mailing on June 8, 2020 (the Notice), with the class notice period of 45 days expiring on July 23, 2020. As of the date of this filing, no class members have objected to the settlement, and no class member has opted-out of the settlement. Conversely, 365 individuals filed claim forms to participate in the FLSA settlement and claim their share of the settlement funds, in addition to 84 who had already filed consents to join the case prior to the settlement for a total of 449 who will be receive an individual settlement share or award of the Non-California class. Thus, in total, 61.00% of the total FLSA class opted in and have sought to participate in this settlement (including Tarsa), in addition to 100% of the California class agreeing to accept the settlement. Respectfully, with such overwhelming support, and for the reasons stated below, the Court should grant Final Approval of the Settlement,

awarding incentive payments pursuant to Definition #37, and sections 2(c) of the settlement, and awarding and approving Class Counsel (also Plaintiffs' counsel) attorney's fees in the amount of $970,000, representing 29.8461538% of the Gross Settlement Fund per paragraph 2(d) of the Settlement Agreement.

## II.   FACTUAL BACKGROUND

Defendant, MarketSource offers customized outsourced sales support, training, and recruiting, as well as various marketing services, business-to-business and business-to-consumer sales expertise serving clients in the information technology, automotive, consumer electronics, and telecommunications industries. MarketSource's marketing services, including merchandising, market research and analysis, lead generation, and brand strategy, are intended to improve clients' sales processes.  Defendant Honda is the U.S. wholly owned subsidiary of Honda, the Japanese vehicle manufacturer.

Named Plaintiffs, Christie Tarsa and Sarah Trattner, worked for Defendants as "Honda Recall Specialists", Plaintiffs alleged they primarily worked to contact owners of Honda vehicles who have defective Takata Airbag parts installed and seek to obtain the defective parts and encourage the vehicle owners to have their defective airbags replaced with new parts

After filing the initial suit, but before the Settlement Agreement or Preliminary Approval Order, the Named Plaintiffs were joined by upwards of 84 or

more other current and former MarketSource employees who filed consents to join in this action pursuant to 29 U.S.C. § 216(b).  The Named Plaintiffs, the Opt-In Plaintiffs, and the other class members all worked for Marketsource as "AHM Zone Recall Specialists" and "District Recall Coordinators" (collectively recall employees).

All the Plaintiffs in this case were paid under compensation plan consisting of a base flat salary with a standardized bonus plan.  Plaintiffs alleged that all Plaintiffs shared, broadly speaking, the same basic and standardized job responsibilities Defendants call "canvassing", which involved preparing a list and route map of HONDA vehicle owners whose vehicles have been identified as having defective Takata Airbag inflators as part of a nationwide Honda, Takata Airbag recall initiative.  Defendant Honda contracted with Defendant MarketSource to staff the position on a nationwide basis.   Plaintiffs and the class members alleged they performed their jobs from their homes and then traveling in assigned geographic areas across most of the entirety of the U.S.

In this lawsuit, Plaintiffs allege that Defendants willfully misclassified all recall employees as exempt from overtime wages in violation of the FLSA and California wage laws, and failed to pay the legally required overtime compensation for all hours worked in excess of forty during any given week in violation of the FLSA and corresponding State Laws in California.  MarketSource denied Plaintiffs'

allegations and maintains that it in good faith, complied with the FLSA and the California State Law Claims. As the parties reached a Settlement of the lawsuit, MarketSource voluntarily agreed to reclassify the recall employee positions to non-exempt status on the FLSA and California wage laws without admitting to any liability or wrongdoing.

Beginning in September 2019, the Parties conducted informal discovery including the exchange of extensive records and data, and engaged in multiple, extensive, 2 full day-long mediations, following by weeks of settlement negotiations. Ultimately, the Parties reached a Rule 23 class and FLSA collective class settlement memorialized in the Settlement Agreement preliminarily approved by this Court by Order on May 8, 2020 (DE 82).

## III.   SETTLEMENT TERMS

The parties have agreed to monetarily resolve the litigation for a Gross Settlement Fund of $3,250,000.00, broken into 2 respective funds: a) $2,023,408.08 for the Non-California FLSA Collective Class, and b) $1,226,591.92 for the California Class, from which $50,000 is allocated for the payment of PAGA penalties. The Gross Settlement Fund amount is based on the Parties' estimation of potential damages for each of the settlement class members for the applicable eligible class periods, as defined below. The Parties submitted the Settlement

Agreement to the Court, and on May 8, 2020, this Court issued the Preliminary Approval Order.

The Settlement Class Members are comprised of those persons who were employed by MarketSource in an eligible position falling within the following definitions:

1. "California Class Members" or "California Class" are all persons who are or were employed by MarketSource in an Eligible Position in California during the Released Claims Period.

2. "Non-California Collective Class Members" or "Non-California Class" are all persons who are or were employed by MarketSource in an Eligible Position in a state other than the State of California during the Released Claims Period.

3. "Eligible Positions" are all individuals employed by MarketSource and who work or worked under the job titles of Honda Zone Recall Specialist, Product Event Specialist, Recall Coordinator, or any other title used to describe the same position.

The settlement provides settlement funds for all class members who worked for MarketSource in eligible positions during the following periods of times :   (1) for California Class Members, the time between July 5, 2015 to the date of Preliminary Approval; and (2) for Non-California Collective Class Members, the time between July 5, 2016 and the date of Preliminary Approval. The Settlement Agreement provides that the Non-California Class Members who submit a claim form shall receive their allocated portion of the Gross Settlement Fund, pursuant to a formula agreed to by the Parties and preliminarily approved by the Court. The formula takes

7

into account the number of weeks each individual worked in an eligible position during the applicable Eligible Period, and the amount earned in salary and bonus while working for the Defendant during this period.[1] The resulting payment equates to approximately 2 hours of overtime per week.

Those Settlement Class Members who submitted a claim and the members of the State Law Settlement Class who do not opt out will be bound by a limited release of all of their overtime-related claims for their applicable Eligible Period.

The Settlement Agreement also allows for the Court to award modest service awards to the Named Plaintiffs for their participation, risk, and efforts involved in championing the cause of all others similarly situated, and in reaching this settlement, in the amounts of $7,500.00 each  respectively; as well as payment of Class/Plaintiffs Counsel's attorneys' fees at 29.8461538% of the Gross Settlement amount.   Defendants do not oppose these requests, terms of which were made part of the settlement agreement.

Under the terms of the Settlement Agreement and the Preliminary Approval Order, Court-Authorized Notice was issued to 868 Settlement Class Members.  *See* Declaration of STEPHEN DONALDSON, Director of JND Legal Administration, ¶ 4,5 (attached hereto as **Exhibit 2**).  Extensive efforts were made by the settlement

---

[1] For a more detailed description of the compensation formula, please refer to Paragraphs 2(a)(i) and (ii) of the Settlement Agreement, attached hereto as **Exhibit 1**.

administrator, JND to ensure delivery of these mailed notifications, and JND undertook numerous actions to reach and resend out undeliverable notices to class members, resulting in only 5 total being returned as undeliverable after the second mailing.  Donaldson Decl., ¶ 6.  As of the date of this motion, 450 Non-California Settlement Class Members have submitted their claims for their portions of the Gross Settlement Fund, or by operation of their previously filed Consents to Join have agreed to participate and be bound by this settlement.[2]  Donaldson Decl. ¶ 14.  There are no Settlement Class Members who have submitted an objection to the settlement, and no Settlement Class Members have opted-out of the settlement.  Donaldson Decl. ¶¶ 15-16.

No Settlement Class Members have responded to the notice after the formal deadline to do so passed on July 23, 2020.  Donaldson Decl. ¶ 11.  Counsel for the Parties have conferred and have agreed any claims submitted after the close of the class notice period on July 23, 2020, but before the date of the final approval hearing in this matter will be honored by the Defendants, and the Parties hereby request the Court's leave to do so.

In light of the overwhelming support from Settlement Class Members who filed their claims, (and the lack of oppositions thereto from all California and Non-

---

[2] The rate of participation in the Non-California class 216b FLSA settlement equates to 61.00% of the available FLSA section 216b awards and 100% of the California Settlement Class Members.  Donaldson Decl. ¶ 11.

California Class members) Class Counsel now request that the Court approve the settlement as fair, reasonable and adequate Pursuant to the terms of the Settlement Agreement, and the Preliminary Approval Order.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The District Court is charged with approving any settlement agreement in a class action. Fed. R. Civ. P. 23(e). The court may approve the settlement "only after a hearing and on a finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." *Id.*

The Eleventh Circuit has identified the following factors as relevant to review of whether a class settlement's terms are fair, reasonable and adequate: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.[3] *See Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  The proposed Settlement Agreement is fair, adequate and reasonable, and treats Settlement Class Members equitably relative to each other, given the costs, risks and probability of the success if the current complex litigation were to continue.

---

[3] At this point, prior to preliminary approval and distribution of notice of the settlement to the Settlement Class Members, it is impossible to know the substance and amount of any opposition to the settlement.

The Eleventh Circuit has identified the following factors as relevant to review of whether a class settlement's terms are fair, reasonable and adequate: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.* The proposed Settlement Agreement is fair, adequate and reasonable, and treats Settlement Class Members equitably relative to each other, given the costs, risks and probability of the success if the current complex litigation were to continue.

## 1. Likelihood of Success at Trial

"Plaintiffs' likelihood of success at trial is not only the first Bennett factor, it is also by far the most important factor in evaluating a class action settlement." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007) (quotation and citation omitted); *accord Knight v. Alabama*, 469 F. Supp. 2d 1016, 1032-33 (N.D. Ala. 2006) ("The likelihood of success at trial is by far the most important factor when evaluating a settlement."). "The likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). "The Court, however, has neither the duty nor the right to reach any ultimate conclusions

on the issues of fact or law which underlie the merits of the dispute . . . In fact, absent fraud, collusion or the like, the Court should be hesitant to substitute its own judgment for that of experienced counsel representing the class." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citations omitted).

With respect to this first factor, Plaintiffs' likelihood of success at trial was not clear. The disputed questions of law and fact in this case were complex, and Plaintiffs were not certain to prevail on the issue of liability or at the class or collective action certification stages.   Among other things, MarketSource disputed that it had misclassified any of the eligible positions as exempt.   In addition, MarketSource had presented and filed arbitration and class and collective action waiver forms for the Plaintiffs in this case, which if sought to be enforced, would have potentially relegated each and every person to seek to file individual arbitration actions, while as well precluding the absent class members and those similarly situated from even being notified of a legal challenge the Defendants' classification of their positions as exempt from overtime wages under state and federal law.   In other words, absent the efforts of the Plaintiffs here and Plaintiffs/Class counsel, 900 or more persons would neither have ever know about this case or any potential claim they would have for unpaid overtime wages under California or federal law.

Moreover, as discussed in more depth below in the context of the range of possible recovery, the disputed questions of law and fact also included

12

MarketSource's' factual and legal basis for contending that, even if this matter would have proceeded on a class or collective basis and Plaintiffs succeeded at the liability stage, Plaintiffs would only be entitled to a limited damages award.

In light of these disputed questions of fact and law, it is clear that all Parties faced significant risks if this case were to proceed to trial, and for the Plaintiffs, a real risk that the Plaintiff's may have all lost their right to proceed forward with a civil action in light of the arbitration agreements and class and jury waivers filed by Marketsource in this case.  This uncertainty and high degree of risk weighs in favor of final approval of the settlement.

2. **Range of Possible Recovery and Point in Range of Possible Recovery Where Settlement is Fair, Adequate, and Reasonable**

The next two *Bennett* factors—the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable—are typically considered together. *See, e.g.*, *Lipuma*, 406 F. Supp. 2d at 1322; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323. "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542.

The settlement terms regarding class member recovery were based on careful analysis by both Plaintiffs and Defendants of the overtime compensation potentially

due to the individual class members, and these settlement terms represent an accurate accounting of the class members' range of recovery.

First, from the beginning of the Parties' settlement negotiations in September 2019, the Parties reviewed relevant time records from the named and opt-in Plaintiffs, as well as MarketSource investigating the reasonable number of overtime hours worked across the class by conducting its own internal investigation and interviews.   The Parties also reviewed the overtime hours reported by Plaintiffs in their declarations and had a reasonable range in order to facilitate negotiations.  The parties also agreed that there are individual workweeks which if analyzed for all class members would have been excluded because the class members and plaintiffs missed one or more days from work and would not have worked overtime in such workweeks.

At the 2nd full day mediation before mediator Lee Parks, Esquire, the plaintiffs presented several damage models as to which MarketSource and Honda had the opportunity to assess and compare to their own analysis conducted of the class members payroll and other work-related records.  Indeed, the second mediation while productive, still left the parties still far apart in their assessments of the potential damages for the class members.  However, after continued settlement communications between counsel following the mediation, MarketSource substantially increased the gross settlement amount to a level that both the Plaintiffs

and class/plaintiffs' counsel believed to be a fair and reason able compromise given all the factors and risks involved with proceeding forward.   While in any settlement, including this one, the defendants would rather settle for less than the sum they ultimately agreed to pay in past wages, and the Plaintiffs would like to receive more, a reasonable compromise was achieved after months of arms-length negotiations, 2 full day mediations, and the exchange of information and class data (including payroll and wage information for all class members).

Using the total class data, the Class Counsel was able to construct several damages models, including models for the Rule 23 California class and the Non-California FLSA Section 216b Collective class.  Defendants further were able to analyze other records and data to assess the exposure for overtime hours, and to factor in weeks in which would be ineligible due to missed work days, days off or holidays etc.

Although Plaintiffs themselves and others contacted by Plaintiffs' counsel reported working significant overtime hours, some in excess of 10 to 15 hours each week, Defendants contended that their internal investigation, data analysis and interviewing tended to show lower numbers.  Defendants contended that their analysis and investigation showed as little as one hour per week worked outside of normal business hours.  Further, when non-standard workweeks (ie. Holidays, vacation days and paid time off) are incorporated into the analysis, Defendants

contended there were a significant number of workweeks in which the hours worked would be less than forty.   Accordingly, a rigorous factual analysis of the data supported, according to MarketSource, a strong basis for arguing for a significantly limited damages award as compared to what the Plaintiffs alleged in their declarations.

In addition, MarketSource had reasonable legal arguments for limiting recovery by the Settlement Class Members. First, MarketSource contended that certain of the overtime hours worked constituted *non-compensable times*, such as travel and meal breaks, and which if depositions were to have been conducted may have yielded over stated overtime hours by the Plaintiffs.   This defense could have limited the hours for each person.

Second, MarketSource contended that any damages should be calculated using the fluctuating workweek method, or half time rate as per 29 CFR 778.114, as all the non-California class members would be subject to this as per 11th Cir authority since they were paid on a salary basis.  *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013); *accord Black v. SettlePou, P.C.*, 732 F.3d 492, 498 (5th Cir. 2013); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010); *see also Valerio v. Putnam Associates Inc.*, 173 F.3d 35 (1st Cir. 1999) (applying fluctuating workweek to claims under Massachusetts law); *Goodrow v. Lane Bryant*, 432 Mass. 165, 176-77 (2000) (same); *Anderson v. Ikon*

*Office Solutions, Inc.*, 38 A.D.3d 317, 317, 833 N.Y.S.2d 1, 1 (1st Dep't 2007) (New York law). If successful, this defense would reduce Plaintiffs' recovery by approximately two-thirds, as any overtime hours would be compensated at a rate of one-half of the regular rate of pay, rather than time-and-a-half. *See, e.g.*, *Lamonica*, 711 F.3d at 1311-12 (the more hours worked, the less the lower the half time rate).

Plaintiffs disagree with MarketSource's legal and factual arguments but nonetheless recognize that these defenses present substantial litigation risk of continued litigation.  Indeed, if MarketSource succeeded on just one of these two theories, a total recovery might not exceed the settlement amount agreed upon, or even Defendants could have prevailed on the liability and class certification issues leaving a zero recovery.  Moreover, if MarketSource sought to enforce the arbitration agreements, a class settlement would potentially have been precluded, forcing many hundreds of eligible class members to litigate their claims individually, if even they knew of a potential clam and challenge the Defendant's classification as exempt from overtime wages under state or federal law.

Because of the wide range of possible recovery based on both a thorough review of the relevant data and on the legal grounds MarketSource advanced for limiting damages even further, Plaintiffs' counsel's opinion is that a recovery at not much more than the ultimate settlement amount was a real possible outcome here, along with the as most people will never seek to individually challenge an

employer's pay practice and file their own claims, a real possibility existed that plaintiffs and all class members relegated to have to pursue individual arbitrations would result in a majority of all receiving 0 in wages, both because by experience and history most will never file, and a great number would not even know about this action and a challenge to the MarketSource's exempt classification status for their positions.   Accordingly, the settlement achieved is certainly within the range of fair and reasonable outcomes given the overall range of possible recoveries and the strength of Plaintiffs' claims. This factor therefore weighs in favor of preliminarily approving the settlement.

### 3.   The Complexity, Expense and Duration of Litigation

With respect to the complexity, expense, and duration of litigation, "[t]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp. 2d at 1323. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens*, 118 F.R.D. at 543.

This hybrid Rule 23 and Section 21b case is both factually and legally complex, even as compared to most FLSA collective actions, and would be very expensive to litigate through trial.   As discussed above, MarketSource has asserted

a legal challenges to an exemption defense, along with the potential litigation over the arbitration agreements which include class and collective action and jury waivers.  Had Plaintiffs sought to dispute the arbitration agreements, such could tie up the case for 1 to 2 years alone on this dispute.

Proceeding with full-blown discovery, motion practice, and trial would be significantly even more complex and expensive.  On top of that time and expense, other written discovery, depositions, and motion practice would have consumed the time and resources of multiple attorneys on 3 different sides (Plaintiffs v. Honda and Marketsource), and this court for far greater than a full year, and ultimately might cost both side fees and costs attorney's fees and costs which would be upwards of one to two million dollars.   Given the **Covid-19 Pandemic**, the rampant unemployment and shut down of businesses, and the financial harm to all sides, including individual class members and corporations, this settlement is potentially the only money many class members will have received in a long time.

Accordingly, this factor weighs in favor of finally approving the settlement.

### 4. The Stage of Proceedings at Which Settlement Was Achieved

The sixth factor, the stage of the proceedings at which settlement was achieved, also weighs in favor of final approval. To evaluate this factor, the court looks to whether that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further

litigation. *Lipuma*, 406 F. Supp. 2d at 1324; *Behrens*, 118 F.R.D. at 544. Early settlement is favored, and full-blown discovery is not necessary. *See, e.g.*, *Lipuma*, 406 F. Supp. 2d at 1324.

Here, the proposed settlement was achieved early in the litigation, but Plaintiffs had the engaged MarketSource and Honda in nearly 4 months of ongoing arm's length settlement negotiations and damages.  Resolution of the case at this Covid-19 Pandemic timeframe, could not have come at a better time for many of the class members, and this settlement also avoids the risks of the being subjected to the inevitable, ongoing, protracted, very costly realistic 2 more years of litigation, along with avoiding the risks that the unknown finances of Defendants could have eventually lead to results as which has just happened to Hertz Corp, and many other companies.   For all of the foregoing reasons, the settlement is fair, reasonable, and adequate, and should be finally approved by this Court.

## V.   <u>INCENTIVE AWARDS</u>

By their instant Motion, Class Counsel is seeking an award of modest service payments of $7,500.00 each for the Named Plaintiffs.   Under the terms of the Settlement Agreement § 2(c), MarketSource and Honda agreed not to oppose the modest service award payments for each of the Named Plaintiffs to compensate them for their time and service on behalf of the absent class members.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class

action litigation." *Hosier v. Mattress Firm, Inc.,* 2012 U.S. Dist. LEXIS 94958, 14-15 (M.D. Fla. June 8, 2012). "Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) *See also Williams v. Omainsky*, No. 15-0123-WS-N, 2017 U.S. Dist. LEXIS 11429, at *14-15 (S.D. Ala. Jan. 27, 2017)

Here, the Named Plaintiffs assumed the risk of coming forward and representing the potential class members in this action.  The Named Plaintiffs expended significant time initiating the investigation of this claim, assumed the risks of an adverse outcome, and assumed the risk that their participation in this lawsuit may have adverse consequences on their current or future employment. Accordingly, the $7500.00 service award to each of the Named Plaintiffs is reasonable in the instant case. "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001).  These sums represent just a mere .02307692% of the gross settlement, far less than courts routinely award in class and collective actions.

These modest service awards are within the range of service awards routinely awarded by courts in similar cases.  *See In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) (approving $303,000 payment to each class representative plaintiff in employment case where class members on average received $38,000); *Gillard, Stramiello and Pate v. Fleetmatics*, CASE NO.:  8:16-

CV-00081-JDW-MAP, ECF No. 70 (M.D. Fla. Feb. 2017) (awarding service awards of $5,000.00 to named Plaintiffs and $2,500 to another opt-in Plaintiffs); *see also Demaria-Dominguez v. Keys Prods.,* No. 15-10224-CIV-MARTINEZ-GOODMAN, 2016 U.S. Dist. LEXIS 185591 (S.D. Fla. Dec. 7, 2016) (awarding $15,000.00 to the Named Plaintiff and $2,000.00 to nine opt-in plaintiffs each).

On balance, these service award requests are reasonable and modest when compared to the benefit conferred upon the other class members who now had the opportunity to claim their wages under this settlement due to plaintiffs' efforts – especially considering that other class members' claims would have diminished or expired but for plaintiffs' efforts.

These service awards are reasonable and necessary to recognize the plaintiffs who took the courage to champion a class and collective action for present and former co-workers; who undertake the duty and responsibility to successfully negotiate a resolution on behalf of other class members; and whose time and dedication participating in the investigation and discovery which make a settlement even possible.

## VI.   ATTORNEYS' FEES AND COSTS

By the instant Motion, Plaintiffs/Class Counsel is applying for less than 30% of the Gross Settlement Fund as attorneys' fees ($970,000.00), representing actually 29.846154%. *see* Fed. R. Civ. P. 23(h) & 54(d)(2).   MarketSource and Honda do not oppose Class Counsel's fee request; as per the Settlement Agreement a fee request up to 30% of the gross settlement was agreed as fair and reasonable. *See* **Exhibit 1** -Settlement Agreement §2(d); and the Plaintiff's unopposed Motion for

Preliminary Approval of this settlement (D.E. 76).  The attorneys' fees and the administrative expenses here are being compensated from a common fund pursuant to Camden I Condo. Assoc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991) (holding that "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class"). The Supreme Court and the 11th Circuit have held that it is appropriate that the attorneys' fees be awarded on the entire gross settlement fund even though amounts to be paid to settlement class members who do not file claims form will remain the sole and exclusive property of Defendant.  *See* Boeing Co. v. Van Gemert, et al., 444 U.S. 472, 480-81 (1980); Waters v. International Precious Metals Corp., 190 F.3d 1291, 1296-97 (11th Cir. 1999).  The percentage of the Fund is the preferred method for compensating Plaintiff attorneys in class and collective actions involving recovery of a settlement fund. Signorelli v. UtiliQuest, LLC, No. 5:08-cv-38-OC-10GRJ, 2008 WL 7825757, (M.D. Fla. July 25, 2008); George v. Acad. Mortg. Corp., 369 F. Supp. 3d 1356.

Plaintiffs counsel's request for 29.846154% percent of the gross settlement funds ("common funds") to be paid as attorneys' fees is reasonable in this case because of the excellent results achieved for 2 classes or groups of similarly situated: 1) a Rule 23 Class Action for all California workers in eligible positions; and 2)  the FLSA Section 216b Collective Action for all eligible workers across the U.S. in all other states.  This case settled only after protracted settlement discussions, attending 2 mediations, informal discovery upon all Plaintiffs of their records and obtaining declarations, obtaining the payroll data and records of the Defendants and preparing

extensive, complex and comprehensive damages modeling had been conducted and extensive mediations and negotiations had occurred.   The sum the case ultimately settled for was far different than what Defendants were willing to agree to when settlement negotiations and the first mediation commenced.  But for the hard work, experience, conviction and skill of the undersigned, this case would not have settled for the sum agreed upon, $3,250,000.00, but may not have settled at all.   The Defendants were represented by respected, and experienced attorneys and who put up a vigorous defensive posture.

The attorneys' fees requested by plaintiffs' counsel should not be reduced because counsel efficiently resolved this case through extensive negotiation efforts rather than by prolonging the litigation and seeking to increase their potential lodestar fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex and novel litigation." MCL 4th § 14.121. As the 11th Circuit stated in Norman v. The Housing Authority of the City of Montgomery, 836 F.2d 1292, 1300 (11th Cir. 1988), "from the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model." Moreover, in similar cases, district courts in the 11th Circuit, AND this District frequently approved common fund attorneys' fees requested by class counsel within or above the percentage requested here.  *See* George v. Acad. Mortg. Corp., 369 F. Supp. 3d 1356, (March 20, 2019) (The **Honorable Charles Pannell Jr. awarding**

**fee request of 33.33% of the Gross Settlement Fund**); <u>Venable v. JW Logistics,
LLC</u>, Case 1:17-cv-03213-LMM, (DE32) Filed 08/27/18 (awarding requested fee of
27.58% of the Gross Settlement Fund to Class Counsel Feldman) <u>Nawaz v. Dade
Med. Coll. Inc.</u>, 2017 U.S. Dist. LEXIS 140119 (awarding fee of 30.73% requested);
<u>Hair v. Granite Telecommunications</u>, Case 9:17-cv-81361-DLB Document 69
Entered on FLSD Docket 11/09/2018 (awarding requested fee of 30% of gross
settlement fund to Class counsel Feldman ).[4]

Plaintiffs' counsel has extensive experience litigating Rule 23 wage and hour
Class actions and FLSA 21b6 Collective Actions in numerous districts, and the
results in this matter warrant the requested fees. *See* <u>Venable, and Hair</u>, *Supra.*  In
addition to presenting legal analysis convincing MarketSource of the uncertainty it
would prevail based upon its asserted defenses, which could have presented a total
defense to some or all of the overtime claims, Class Counsel expended substantial
efforts locating and interviewing witnesses and opt-in plaintiffs; undertook
substantial research and monumental analysis of computerized payroll and other
employment records, completed substantial mediation briefing, including
researching case law on the outside sales exemption across all Circuits, and then
negotiated a favorable settlement after two (2) full day mediations.

---

[4] *See*, e.g., <u>Signorelli v. UtiliQuest, LLC</u>, 2008 U.S. Dist. LEXIS 109357, 8-9 (M.D. Fla. July 25, 2008) (awarding
thirty percent of the maximum gross settlement amount as fair and reasonable attorneys' fees, costs and expenses
incurred in prosecution of litigation to be paid from the common fund); <u>Pinto v. Princess Cruise Lines</u>, 513 F. Supp.
2d 1334 (S.D. Fla. 2007) (attorneys' fees and costs equal to 30 percent of common fund approved); <u>Angione, et al. v.
PSS World Medical, Inc.</u>, 3:02-00854 (M.D. Fla. Nov. 5, 2004) (approving attorneys' fees constituting 40% of
common fund established for the benefit of 63 plaintiffs for unpaid overtime wages in case brought under FLSA and
California labor law); *see also, e.g.,* <u>Lenahan v. Sears, Roebuck and Co.</u>, 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006)
(attorneys' fees and costs equal to 31.9 percent of common fund approved); <u>Pierre-Val v. Buccaneers Ltd. P'ship</u>, No.
8:14-cv-01182-CEH-EAJ, 2015 U.S. Dist. LEXIS 187669 (M.D. Fla. Dec. 7, 2015)(approving 32% fee request in
hybrid FLSA fund case).

Plaintiffs, Opt-In Plaintiffs and members of the California Class and Non-California Collective Class, nationwide have all benefited from plaintiffs' counsel's efforts. In addition, after court preliminary approval of the settlement, and by experience, continuing on through after final approval, plaintiffs' counsel will continue to provide legal advice to Plaintiffs and class members regarding the terms of the settlement and will facilitate the execution of the settlement. All these factors warrant that attorneys' fees in this matter be calculated at 29.846154% percent of the Gross Settlement Fund (aka "common fund") obtained on behalf of both settlement class members.

1.  **The Eleventh Circuit Dictates That Class Counsel Fees Should Be Awarded From the Common Fund Created Through Class Counsel's Efforts.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 120 (N.D. Ill. 1989) (citation omitted); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1195 (6th Cir. 1974). The common benefit doctrine recognizes that those who receive the benefit of a

lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478,; *Mills v. Electric Auto–Lite Co*., 396 U.S. 375, 392 (1970). The Supreme Court, the Eleventh Circuit, and courts in this District have all noted that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." I*n re Sunbeam Sec. Litig*., 176 F.Supp.2d 1323, 1333 (S.D.Fla.2001) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

"In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement." *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d 1330, 1358 (S.D. Fla. 2011). In *Camden I,* the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I,* 946 F.2d at 774.

"The lodestar approach should not be imposed through the back door via a 'crosscheck.'" *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation."

*In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997).  Precisely for this reason, in *Camden I,* the Eleventh Circuit criticized lodestar and the inefficiencies that it creates. 946 F.2d at 773–75. In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases"). Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. *See, e.g., David v. American Suzuki Motor Corp.,* 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010).[5] "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden I,* 946 F.2d at 774 (citations and alterations omitted).

### 2. The *Camden I* Factors Support the Award of just less than 30% of the Fund.

This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount

---

[5] *See Pierre - Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH-EAJ, 2015 U.S. Dist. LEXIS 187669, at *5-6 (M.D. Fla. Dec. 7, 2015); *see also Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D. Fla. May 20, 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.,* 2002 WL 34343944 (S.D. Fla. May 3, 2002); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002).

of any fee must be determined upon the facts of each case." *In re Sunbeam,* 176 F.Supp.2d at 1333 (quoting *Camden I,* 946 F.2d at 774).

Here, pursuant to the terms of the Parties' Settlement Agreement, Plaintiff's undersigned counsel may receive up to 30% of the common fund created by their efforts. Respectfully, here such a fee is appropriate, given the factual circumstances of this case, and well within the range of typical fee awards for common fund cases as well.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I,* 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974)).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam,* 176 F.Supp.2d at 1333

(quoting *Camden I,* 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen,* 975 F.Supp. 1468, 1472 (S.D. Fla.1997)). The *Camden I* factors are discussed below:

a. **Time and Labor Involved.**

Class counsel expended significant effort to achieve the $3,250,000.00 Gross Settlement Fund for the California Rule 23 Class members, and the Non-California FLSA Section 216b national class members. As the Court is aware, this case has been pending now for more than 1 year.  During this time, the parties engaged in extensive informal discovery and two separate, day-long settlement conferences and negotiations before the Plaintiffs were able to resolve this case.   In addition, Plaintiffs' counsel spent months reviewing corporate policies, work schedules, payroll records etc., and all the class payroll data in preparing numerous damages models.

In performing the aforementioned work on behalf of the 2 individual classes, Class Counsel has already spent well over 500 hours of attorney and paralegal time.  Moreover, the requested fees are not based solely on the time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. *See deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *10

(S.D.N.Y. Aug. 23, 2010) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time").   In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  For example, since the Notices were sent out, Class Counsel and staff have responded to weekly inquiries from class members requesting consultation and discussion with the undersigned, and more information regarding the terms of the settlement and the amount of their settlement award, as well as asking numerous other questions about the law and their own individual situations.  Class Counsel expects to continue be available and duty bound to respond to more class member inquiries after final approval, especially after checks are issued.  The undersigned reasonably expects at least another 100 hours of time may be necessary to counsel all the settlement class members based upon the sized of the classes and from experience in similar class and collective action cases.

   b. **The Issues Involved Were Novel and Difficult and Required the Skill of a Highly Talented Team of Attorneys.**

Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law… These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA/Wage and Hour cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

In this case, there were numerous disputed questions of law and fact, including the interpretation of the FLSA's outside sales exemption, and its application (or lack thereof) to Defendant. As to each of the claims, Plaintiffs' counsel was met with a vigorous defense from Defendants and their seasoned and experienced counsel. Defendants challenged Plaintiffs on each legal disputing the legal theories and requiring extensive and an unusually high

number of hours performing legal research and analysis of the FLSA and corresponding federal regulation on issues including time tracking, automatic meal break deductions, off the clock work, and numerous asserted exemptions and challenges to the hours claimed to be worked.  The settlement covers numerous job titles and also added to the legal challenge to this case.  The parties negotiated and debated every aspect of the claims and defenses before reaching the settlement agreed upon.

Given the novel and complex issues outlined above, the attorneys on both sides of the case were required to have an exceptional amount of skill and knowledge in wage and hour law, in order to properly litigate the case on behalf of their clients. *See Walco,* 975 F.Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I,* 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson,* 488 F.2d at 718; *Ressler v. Jacobson,* 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested... In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium."

*In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1363. So it should be here. *Id.*

      c. **The Claims Against Two Separate Defendants Here Entailed Considerable Risk.**

Prosecuting these claims was a significant undertaking.  The risks involved in this type of case from the Plaintiffs' perspective have been discussed at length above, and elsewhere. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement.  A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *Id.* at 1363-64, including pressing Defendant to commence with early efforts to engage Defendants in settlement discussions for all similarly situated persons in the putative class. Certainly, there was a risk the Court might not approve class certification or subsequently decertify the class even after years of litigation ensued.

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.' " *In re Sunbeam,* 176 F.Supp.2d at 1336. In addition, "[t]he point at which plaintiffs settle with defendants ... is simply not relevant to determining the risks incurred by their counsel in agreeing

to represent them." *Skelton v. General Motors Corp.,* 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied,* 493 U.S. 810 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112 (3d Cir.1976); *Walco,* 975 F.Supp. at 1473.

Throughout the pendency of the case, Defendants maintained that the Plaintiffs and all others similarly situated were exempt from the FLSA and the California State Wage Law overtime requirements and that the Plaintiffs would not be able to maintain a class or collective status due to factual differences in the work settings of the individual members of the class, or, due to the arbitration agreements, would all be dismissed from this case. "[G]iven the positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important, work like this, such decisions must be properly incentivized." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1364. Respectfully, thus the proper incentive here is to award the 30 % fee agreed upon by the Parties and as requested.

    d. **Class Counsel Assumed Substantial Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.**

Class Counsel prosecuted this litigation entirely on a contingent fee basis. In undertaking to prosecute this complex action on that basis, Class Counsel assumed

a significant risk of nonpayment or underpayment. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam,* 176 F.Supp.2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 548 (S.D.Fla.1988), aff'd, 899 F.2d 21 (11th Cir.1990)); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir.1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F.Supp. 755, 759 (N.D.Ga.1985), *modified,* 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. of Education,* 631 F.Supp. 78, 86 (M.D.Ala. 1986). As Judge King has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens,* 118 F.R.D. at 548. The risks taken by Class Counsel have been discussed. It is uncontroverted that the time spent on this litigation was time that could not be spent on other matters. Thus, this factor too supports the requested fee.

    e.  **The Requested Fee Comports With Customary Fees Awarded in Similar Cases, including in this District.**

Numerous recent decisions with this Circuit and in similar wage and hours class/collective actions have awarded attorneys' fees up to, and often in excess of, the 30% requested by class counsel here. *See, e.g.*, *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee... which is one-third (33.33%) of the settlement fund, is awarded from the settlement fund to the plaintiff's Lead Counsel. This amount is fair and reasonable in light of... fee awards in comparable cases.) (Merryday, J.); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc*., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation...' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc*., 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc*., 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund

theory); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99–md–01317–PAS, Doc. No. 1557 at 8– 10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis). Here, Plaintiffs' counsel has elected to request less than the 33.33% fee awarded in similar cases, and is not opposed by Defendants nor any Settlement Class Members. The case involved both a Rule 23 Class action Settlement, along with the Section 216b Collective Action Settlement, in a Hybrid Action and Settlement.

  f. **The Remaining *Camden I* Factors Also Favor Approving Class Counsel's Fee Request.**

  The remaining *Camden I* factors also support Class Counsel's fee request. The burdens of this litigation and the results obtained on behalf of Plaintiff and the Class weigh in favor of the fee requested. The fee request is firmly rooted in "the economics involved in prosecuting a class action." *See In re Sunbeam,* 176 F.Supp.2d at 1333. "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1368. The factual record in this case compel this result. Further, as indicated in the Settlement Agreement, Defendant does not oppose a request. Accordingly, an award of attorneys' fees and costs in the amount of 30% of the Gross Settlement Fund is fair, reasonable and appropriate in this case.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter the Final Order Approving the Class and Collective Action Settlement, attached as **Exhibit 3** hereto, which, *inter alia*:

i.   approves the Parties' settlement as fair, reasonable and adequate;

ii.   finally certifies the instant proceeding as a class action pursuant to Federal Rule of Civil Procedure 23, and conditionally certify this proceeding collective action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") for purposes of settlement only;

iii.   approves incentive payments to the Named Plaintiffs, Tarsa and Trattner, in the amount of $7,500.00 each;

iv.   finally certifies the instant proceeding as a class action pursuant to Federal Rule of Civil Procedure 23, and conditionally certify this proceeding collective action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") for purposes of settlement only

v.   awards Class Counsel, and Plaintiffs counsel attorneys' fees in the amount of $970,000.00 and costs of $1550.00;

vi.   enters final judgment in accordance with the terms of the Settlement Agreement.

Respectfully submitted this 7th day of August 2020.

/s/ Mitchell L. Feldman
Mitchell L. Feldman
**FELDMAN LEGAL GROUP**
6940 W. Linebaugh Avenue, #101
Tampa, Florida 33626
Tel: (877) 946-8293
Fax: (813) 639-9376
mlf@feldmanlegal.us
*Attorneys for Plaintiffs and the classes*

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on August 7th, 2020,  a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below, and also via any additional manner noted below.

/s/Mitchell L. Feldman
Mitchell L. Feldman